# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RMH Franchise Holdings, Inc., *et al.*,[1] | ) | Case No. 18-11092 (BLS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| _____ | ) | |
| | ) | |
| DINE BRANDS GLOBAL, INC., | ) | |
| APPLEBEE'S RESTAURANTS LLC, | ) | |
| and APPLEBEE'S FRANCHISOR LLC | ) | Adv. Pro. No. _____ |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RMH FRANCHISE HOLDINGS, INC., | ) | |
| NULNK, INC., RMH ILLINOIS, LLC, | ) | |
| RMH FRANCHISE CORP., and | ) | |
| CONTEX RESTAURANTS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

The above-named plaintiffs (collectively, "<u>Applebee's</u>") hereby file this complaint

("<u>Complaint</u>") against the above-named defendants (collectively, the "<u>Defendants</u>" or the

"<u>Debtors</u>")[2] and seek the following relief:

---

[1]  The Defendants and the last four digits of their respective taxpayer identification numbers are as follows: RMH Franchise Holdings, Inc. (7150); NuLnk, Inc. (7381); RMH Illinois, LLC (0696); RMH Franchise Corp. (1807); Contex Restaurants, Inc. (0710). The headquarters for the above-captioned Defendants is located at One Concourse Parkway, N.E., Suite 600, Atlanta, GA 30328.

[2]  Applebee's reserves its rights to assert any monetary claims and/or other rights at a later date. This includes claims and rights against the non-debtor guarantor, ACON Franchise Holdings, LLC. Applebee's also continues to accrue an administrative priority claim based on the Defendants' continued willful post-petition infringement of Applebee's trademarks. Applebee's further reserves its right to assert an administrative claim under 11 U.S.C. § 503 based on the Defendants' post-petition trademark infringement and other post-petition grounds and benefits.

a.  A Declaratory Judgment that the Franchise Agreements (as defined herein) were terminated as of April 27, 2018, prior to the date the Defendants filed chapter 11 bankruptcy, and, thus, are not property of the Defendants' bankruptcy estates;

b.  A Declaratory Judgment that Applebee's properly and timely exercised its right to take control of the requested RMH Restaurants (defined below) located in Texas and Arizona, including by filing this Complaint;

c.  A Declaratory Judgment that Applebee's properly and timely exercised its right to take control of the requested Remaining RMH Restaurants (defined below), including by filing this Complaint; and

d.  A Declaratory Judgment that recognizes Applebee's right to enforce its post-termination rights under the Franchise Agreements, which Applebee's proposes to pursue pursuant to its pending Motion to Lift Stay, including, without limitation, to require de-affiliation of all locations closed to date or which may be closed in the future.

## Jurisdiction and Venue

1.    This Court has subject-matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  The above-captioned bankruptcy cases (the "Cases") are currently pending before this Court.

2.    Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. § 1408 and 1409(a).

3.    Certain aspects of this adversary proceeding are core matters pursuant to 28 U.S.C. § 157 or Bankruptcy Rule 7001 and other aspects are non-core matters.  This action arises under the Bankruptcy Code, involves alleged property of the applicable Debtors' estates, and arises in and is related to the applicable Debtor's chapter 11 case.  Applebee's reserves all rights as to non-core matters including any non-core matters which may be raised in response to this Adversary Complaint or otherwise.

## Parties

4.    Plaintiff Dine Brands Global Inc. ("Dine Brands") is a Delaware corporation with its principal place of business in Glendale, California.

- 2 -

5.      Applebee's Restaurants LLC ("<u>Applebee's Restaurants</u>") is a Delaware limited liability company with its principal place of business in Glendale, California.

6.      Applebee's Franchisor LLC ("<u>Applebee's Franchisor</u>") is a Delaware limited liability company with its principal place of business in Glendale, California.

7.      The ultimate parent company of Applebee's Restaurants and Applebee's Franchisor is Dine Brands.

8.      Defendants RMH Franchise Holdings, Inc., NuLnk, Inc. and RMH Illinois, LLC are Delaware corporations.  Defendant RMH Franchise Corp. is a Kansas corporation. Defendant Contex Restaurants, Inc. is a Texas corporation.  The headquarters of all Defendants is located at One Concourse Parkway, N.E., Suite 600, Atlanta, GA 30328.

9.      Some of the Defendants were either franchisees, or guarantors of the financial obligations of franchisees, for the Applebee's restaurants as listed and noted in **<u>Exhibit 1</u>** hereto (the "<u>RMH Restaurants</u>").

10.      Applebee's is a franchisor of a nationally recognized chain of restaurants, and Applebee's brand and image are key to the overall value and success of the Applebee's franchise system.  Applebee's brand and image are based principally on the use of certain trademarks (the "<u>Marks</u>") that Applebee's owns and licenses to authorized franchisees.

11.      Applebee's spends substantial sums for advertising and promotion of the Marks. The Marks are distinctive, widely recognized, and engender a substantial amount of goodwill and consumer association.

### <u>Factual Allegations Applicable To All Counts For Relief</u>

#### <u>The Franchise Agreements</u>

12.      The Defendants' license to use the Marks and right to operate the RMH Restaurants was governed by individual franchise agreements (the "<u>Franchise Agreements</u>") with

DOCS_DE:219666.1 18037/001

Applebee's for each of the RMH Restaurants.  A Form Franchise Agreement is attached hereto as **Exhibit 2**.  The Franchise Agreements required the Defendants to, among other things, pay certain royalties and other fees to Applebee's as consideration for the use of the Marks.  A failure to pay such fees and royalties was expressly considered a material breach under the Franchise Agreements and entitled Applebee's to terminate the Franchise Agreements "immediately upon written notice to [the Defendants]."  (Exhibit 2, Form Franchise Agreement, Section 19.1(a).)

13.     In addition to outlining Applebee's right to terminate for non-payment of royalties and other fees, the Franchise Agreements also outlined in detail the Defendants' duties and obligations upon termination and the post-termination rights of Applebee's.  Specifically, the Franchise Agreements provided for the following upon termination:

- Ceasing Use of the Marks:  "[The Defendants] shall immediately discontinue use of the System and its use of the Marks and other identifying characteristics."

- De-Identification of the RMH Restaurants:  "[I]f the Restaurant premises are owned by [the Defendants] or leased from a third party, [the Defendants] shall, upon demand by [Applebee's], remove (at [the Defendants'] expense) the Marks, sign facia, and other identifying characteristics from all premises, and paint all premises and other improvements maintained pursuant to this Agreement a design and color which is basically different from [Applebee's] authorized design and color."

- Ceasing Operation of the RMH Restaurants:  "[The Defendants] shall not thereafter use the Marks or any other trademark, trade name, service mark, logo, insignia, slogan, emblem, symbol, design or other identifying characteristic that is in any way associated with [Applebee's], or use any food or proprietary menu item, recipe or method of food preparation or operate or do business under any name or in any manner that might tend to give the public the impression that [the Defendants are] or [were] a licensee or franchisee of, or otherwise associated with, [Applebee's] or its affiliated companies."

(*See* Exhibit 2, Form Franchise Agreement, Section 19.2(a)-(c).)

14.     In the event of termination of the Franchise Agreements where the Defendants leased the real-estate for the restaurants—which was the situation for nearly all of the RMH Restaurants—the Franchise Agreements afforded Applebee's important rights wherein

- 4 -

Applebee's could step into the shoes of the Defendants on the leases and purchase the RMH Restaurants' equipment, furnishings, supplies, and other products. Specifically, the Franchise Agreements provided as follows:

- <u>Requirement that leases be assignable to Applebee's:</u> "If the Restaurant premises are leased by [the Defendants] from a third party, such lease must allow [the Defendants] to assign the lease to [Applebee's]."

- <u>Right to Assignment of the Leases and Surrender of the Premises:</u> "Upon termination of this Agreement for any reason, [Applebee's] has the right, exercisable upon written notice to [the Defendants] within thirty (30) days after termination is effective, to require [the Defendants] to assign all [the Defendants'] rights and obligations under the lease to [Applebee's] and to immediately surrender possession of the premises, including all fixtures and leasehold improvements, to [Applebee's]."

- <u>Right to Purchase Equipment, Furnishings, and Supplies:</u> "If [Applebee's] exercises that right [of assignment and surrender of the premises], it has an additional right, to be exercised within thirty (30) days after taking possession of the premises, to purchase all of [the Defendants] equipment, signs, decor items, furnishings, supplies and other products and materials at their then-fair market value. If the parties cannot agree on the price, the price will be determined in the matter set forth in connection with Franchisee-owned Restaurant premises [i.e., by a panel of three appraisers with each party choosing one appraiser and the two appraisers choosing the third.]"

(*See* Exhibit 2, Form Franchise Agreement, Section 19.4(f).)

15.     Further, pursuant to Applebee's right under the Franchise Agreements to require assignment of any real-estate lease for the RMH Restaurants, there is a form rider which is attached to and made a part of the Defendants' real estate leases that acknowledges and provides for RMH's right to sublet or assign the premises specifically to Applebee's or its affiliates. (*See* Form of Applebee's Restaurant Franchisee Lease Rider, attached as **Exhibit 3** hereto.) In the rider, the Defendants and the landlords for the RMH Restaurants specifically agreed that Applebee's is an intended third-party beneficiary of the rider and has the right to enforce the terms of the rider as if it was a party to it. (*See* Exhibit 3, Form of Applebee's Restaurant Franchisee Lease Rider, ¶ 10.)

16.    The Franchise Agreements afford Applebee's with near-absolute discretion in its operation of the franchise system and foreclose any claim by or liability to the Defendants based on Applebee's exercise of that discretion:

- The Franchise Agreement and the parties' relationship "grants [Applebee's] the discretion to make decisions, take actions and/or refrain from taking actions not inconsistent with Franchisee's explicit rights and obligations hereunder that may affect favorably or adversely Franchisee's interests";

- "[Applebee's] will use its business judgment in exercising such discretion based on [Applebee's] assessment of its interests and the System, balancing those interests with or against the interests of the operators of Restaurants generally (including Franchisor, its affiliates and other franchisees) and specifically without considering the individual interests of any particular franchisee";

- "[Applebee's] will have no liability to Franchisee for the exercise of its discretion in this manner";

- "even if [Applebee's] has numerous motives for a particular action or decision, so long as at least one motive is a reasonable business justification for such action or decision, no trier of fact in any legal action shall substitute its judgment for [Applebee's] judgment so exercised, and such action or decision will not be subject to challenge for abuse of discretion."

(*See* Exhibit 2, Form Franchise Agreement, Section 25.7 (emphasis added).)

17.    The Franchise Agreements "and the documents referred to [therein] constitute the entire agreement between the parties, superseding and canceling any and all prior and contemporaneous agreements, understandings, representations, inducements and statements, oral or written, of the parties in connection with the subject matter [thereof]."  (*See* Exhibit 2, Form Franchise Agreement, Section 25.5.)

18.    The Franchise Agreement shall not be amended or modified in the future unless such amendment or modification is "executed in writing both by Franchisor and by Franchisee and Principal Shareholders."  (*See* Exhibit 2, Form Franchise Agreement, Section 25.6.)

19.    The Franchise Agreements are governed by Kansas law.  (*See* Exhibit 2, Form Franchise Agreement, Section 21.2.)

**The Defendants' Breach of the Franchise Agreements**

20.     Beginning in June 2017, the Defendants stopped paying royalties due under the Franchise Agreements.  (*See* Exhibit 2, Form Franchise Agreement, Section 9.1(b) (requiring payment of royalties).)

21.     In January 2018, the Defendants stopped paying advertising and other fees due under the Franchise Agreements on a majority of the franchises and, eventually, stopped paying on all of them.  (*See* Exhibit 2, Form Franchise Agreement, Section 9.1(a) and (c) (requiring payment of advertising and other fees).)

22.     Despite their non-payment of royalties and advertising and other fees, the Defendants continued to operate the franchises using the Applebee's Marks.

**Applebee's Notice of Default to the Defendants and Extensions of the Cure Period**

23.     On or about September 20, 2017, Applebee's provided notice to the Defendants of their material breaches of the Franchise Agreements stemming from their nonpayment of royalties (the "Notice of Default," attached hereto as **Exhibit 4**).   The Notice of Default informed the Defendants that they were required to cure each default of the Franchise Agreements by paying "the Overdue Amount within 90 days of receipt of this letter."  The Notice of Default also specifically stated that "[f]or the restaurants for which RMH does not cure the default, the franchise agreements for the restaurants will terminate on the 91st day *without further notice*, and RMH will be expected to fully comply with its post-termination obligations under the relevant franchise agreement(s)."  (*See* Exhibit 4, Notice of Default (emphasis added).)

24.     The Defendants did not cure any of the defaults with regard to the Franchise Agreements within the initial 90-day period specified in the Notice of Default.

25.     On December 18, 2017, shortly before the initial cure period expired under the Notice of Default, Applebee's extended it for another 30 days in the hope an amicable resolution

could be achieved.  Specifically, Applebee's notified the Defendants in the December 2017 letter that "without waiver of our rights and remedies, we are amenable to extend your cure period from the restaurants listed on the attached schedule by an additional 30 days to **January 22, 2018**."  (*See* December 18, 2017 Extension Letter (emphasis in original), attached hereto as **Exhibit 5**.)

26.    Rather than cure the defaults, the Defendants, as noted above, compounded the defaults in January 2018 when the Defendants stopped paying advertising and other fees due under the Franchise Agreements.

27.    The time to cure the Defendants' defaults were extended again by Applebee's on January 19, 2018, February 8, 2018, February 26, 2018, March 12, 2018 and April 9, 2018 ("Additional Extension Letters," attached hereto as **Exhibits 6-10**).  Each of the Additional Extension Letters extended the time to cure the defaults using the same language as the December 2017 letter.  Each of the extension letters tied back to the September 2017 original Notice of Default so that at the end of the extended cure period - which had never been interrupted or previously lapsed - the Franchise Agreements would expire automatically and without further notice at the end of the extended cure period.

28.    On April 16, 2018, after Applebee's attempted numerous times to resolve the situation, Applebee's reminded the Defendants by letter of their failure to respond to Applebee's latest counter-proposal in March 2018 and stressed the urgency of the matter and the possibility of litigation.  (*See* April 16, 2018 Letter, attached hereto as **Exhibit 11**.)  Specifically, Applebee's letter provided that Defendants' "past assurances that RMH and ACON intend to move forward expeditiously appear questionable at this point.  We have no choice but to interpret any further delay as an indication that RMH and ACON do not consider this matter to

be a priority.  At this point, we are considering all of our legal options in the resolution of this matter, including, without limitation, litigation."

29.     Also on April 16, 2018, Applebee's sent the Defendants a separate notice that provided for the last extension of the cure period, setting April 26, 2018, as the deadline for cure ("Last Extension Letter," attached hereto as **Exhibit 12**.)

**Pre-Petition Termination of the Franchise Agreements**

30.     The Defendants did not cure any of the defaults by April 26, 2018.  Accordingly, the Franchise Agreements terminated the next day, April 27, 2018, pursuant to their own terms and the previously issued Notice of Default, which satisfies the written notice requirement in Section 19.1(a) of the Franchise Agreements.

31.     Through April 2018, the Defendants owe Applebee's at least $12,161,823 in unpaid royalties and fees with regard to all franchises and there are payment defaults as to each Franchise Agreement.

32.     The Defendants filed its *List of 30 Largest Unsecured Claims* [Dkt. No. 28] in the Cases.  Defendants list Applebee's as having an unsecured claim of $14,276,476.40.  Further, Defendants have not made or offered to escrow any payments to Applebee's related to the post-petition benefits they are receiving from continued use of the market and benefit and profits therefrom.

33.     Although the Defendants repeatedly ignored their fundamental obligation under the Franchise Agreements to pay basic royalties and advertising and other fees to Applebee's, on April 25, 2018, Applebee's notified the Defendants that Applebee's agreed to forbear from taking any further enforcement actions against the Defendants until May 8, 2018 ("Forbearance Notice," attached hereto as **Exhibit 13**.)  This Forbearance Notice specifically provided that "Applebee's agrees that it will forbear from taking any further actions against you or the

Franchise Restaurants, whether at law or in equity, to enforce our rights and remedies against you or the Franchise Restaurants, under or in connection with the franchise agreements, until May 8, 2018."

34.     The Forbearance Notice was necessary to allow Applebee's to prepare to potentially take over RMH Restaurants.  However, the Forbearance Notice also specifically notified the Defendants that "**[t]his agreement to forbear is not an extension of the cure periods referred to in prior Notices, which have already expired**."

35.     The forbearance regarding taking action against the Defendants, which was effective on April 27, 2018 (the day the Franchise Agreements terminated), expired on May 7, 2018, pursuant to the terms of the Forbearance Notice.  As a result, as of 12:01 a.m. on May 8, 2018, the Defendants were required to comply with certain post-termination obligations under the Franchise Agreements, including ceasing operation of the RMH Restaurants, ceasing the use of Applebee's Marks, and either de-identifying the RMH Restaurants or complying with Applebee's right, if exercised under the Franchise Agreements, to assign any real-estate leases for and surrender the premises of any leased RMH Restaurants.

### The Defendants' Failure to Comply with their Post-Termination Obligations and Applebee's Damages

36.     The Defendants have failed to comply with their post-termination obligations under each of the Franchise Agreements and, without limitation, have not ceased operation of the franchises, ceased use of Applebee's Marks, or de-identified the operating restaurants.

37.     In addition to the non-payment of royalties and advertising and other fees, between about June 2017 and April 2018, the Defendants unilaterally closed 15 RMH Restaurants across several states (the "Closed franchises") without Applebee's consent, and prior to the end of the term of the relevant Franchise Agreements.  The Defendants stopped paying, or

had already stopped paying, royalties and/or advertising and other fees due under the Franchise

Agreements for the Closed franchises.

38.     At no point did Applebee's waive or otherwise consent to the Defendants'

unilateral closure of any of the Closed franchises, or the non-payment of royalties and

advertising and other fees under the Franchise Agreements.

39.     As a result of the Defendants' improper closure of the Closed franchises, the

Defendants breached the Franchise Agreements for the Closed franchises and have deprived

Applebee's of the royalties and other fees it would have received for the balance of the term of

the Franchise Agreements.

40.     As a result of the Defendants' improper closure of the Closed franchises,

Applebee's has been damaged and suffered lost royalties and advertising fees, and is continuing

to suffer, and will suffer, lost future royalties and advertising fees of approximately $10,209,000.

The Defendants are liable for these damages and Applebee's reserves all rights to file a proof of

claim for these amounts and other rights.

41.     The total damages suffered by Applebee's, as a result of the Defendants'

improper closure of the Closed franchises and unpaid royalties, advertising and other fees, are as

follows:

| Damage | Amount |
|---|---|
| Unpaid Royalties and Fees (All RMH Restaurants) | $12,161,823 |
| Lost Future Royalties and Fees (Closed franchises) | $10,209,000 |
| | |
| **TOTAL** | **$23,370,823** |

Applebee's reserves all rights to assert a proof of claim for these damages and other

rights.

**Applebee's Exercise of its Post-Termination Rights**

42.    On May 7, 2018, Applebee's, as a courtesy to Defendants, made a telephone call to Defendants and advised them of Applebee's intention to take back the RMH Restaurants in Texas and Arizona.

43.    On May 8, 2018, after receiving the telephone call from Applebee's on May 7, 2018, the Defendants commenced the Cases under chapter 11 of the United States Bankruptcy Code (the "Petition Date").

44.    Also on May 8, 2018, Applebee's delivered a letter to the Defendants to reconfirm and make clear that the time to cure the defaults with respect to the Franchise Agreements expired on April 26, 2018 and the Franchise Agreements were automatically terminated on April 27, 2018 pursuant to the Notice of Default previously sent to the Defendants on September 20, 2017.  (*See* Termination Confirmation Letter, attached hereto as **Exhibit 14**.) The letter further provided that, with respect to the RMH Restaurants in Arizona and Texas, Applebee's exercised all of its post-termination rights under Section 19.4(f) of the Franchise Agreements, including requiring the underlying leases be assigned to Applebee's so that Applebee's can take control of those restaurants.

45.    Applebee's delivered a separate letter to the Defendants on May 8, 2018, wherein Applebee's agreed to forbear from enforcing its termination rights with the RMH Restaurants, other than the Arizona and Texas RMH Restaurants, until May 20, 2018 ("May Forbearance Notice," attached hereto as **Exhibit 15**).  This letter, like the previously issued Forbearance Notice, provided that "[t]his agreement to forbear is not an extension or a restarting of the prior cure period referred to in prior Notices, which has already expired, nor is it a new cure period." Like the Forbearance Notice, this forbearance was issued, for logistical reasons, to allow

- 12 -

Applebee's to prepare to take over the remaining RMH Restaurants over time.  That forbearance period has now expired and has not been further extended.

46.      On May 16, 2018, Applebee's filed its Motion to Modify the Automatic Stay [Dkt. No. 91] (the "<u>Stay Relief Motion</u>").  The Stay Relief Motion remains pending and is incorporated by reference herein.

47.      On May 23, 2018, the Court held a telephonic hearing to address scheduling of Applebee's Stay Relief Motion.  At the hearing, the Court orally ordered Applebee's to commence an adversary proceeding to seek the relief requested in the Stay Relief Motion. However, the Court did not require Applebee's to withdraw its Stay Relief Motion and Applebee's reserves all rights as to its pending Stay Relief Motion.

## COUNT I - DECLARATORY JUDGMENT THAT THE FRANCHISE AGREEMENTS ARE NOT PROPERTY OF THE ESTATES BASED ON THEIR TERMINATION AS OF APRIL 27, 2018

48.      Applebee's repeats and restates the allegations set forth in the foregoing paragraphs of this Complaint as if set forth fully herein.

49.      Pursuant to the Notice of Default and the Last Extension Letter sent to the Defendants, the deadline for the Defendants to cure their monetary defaults under the Franchise Agreements expired on April 26, 2018.  No extended or new cure period was granted.

50.      Applebee's provision of a short-term forbearance to allow for an orderly transition of the RMH Restaurants to corporate operations to make sure customers have access to the Applebee's dining experience uninterrupted at their local location is not a further cure period.

51.      Defendants did not cure their monetary defaults by April 26, 2018.

52.      As a result, all of the Franchise Agreements for the Defendants' restaurants terminated the day after the cure period expired, on April 27, 2018, by their own terms and

pursuant to the Notice of Default, which satisfies the written notice requirement in Section 19.1(a) of the Franchise Agreements.

53.     Thus, Defendants' rights to operate as a franchisee at each and every RMH Restaurant expired with the termination of the Franchise Agreements on April 27, 2018.

54.     Accordingly, on the Petition Date, the Defendants' did not have a legal or equitable interest in the Franchise Agreements, and, thus, the Franchise Agreements are not property of the estates pursuant to 11 U.S.C. § 541.

55.     Any complaints of the Defendants regarding the Applebee's system or other disputes are no excuse to the Defendants' willful non-payment and other defaults under the Franchise Agreements and applicable law nor are they are valid defense to the termination or a grounds for ongoing infringement of Applebee's Marks.

56.     Any complaints of the Defendants about any ongoing discussions or communications before or after the termination was effective are not a valid defense to the termination or a grounds for ongoing infringement of Applebee's Marks.

THEREFORE, this Court should find and declare that the Franchise Agreements were terminated as of April 27, 2018 and, thus, are not property of the Defendants' bankruptcy estates.

## COUNT II - DECLARATORY JUDGMENT AS TO APPLEBEE'S TIMELY EXERCISED RIGHT TO TAKE CONTROL OF THE TEXAS AND ARIZONA RMH RESTAURANTS

57.     Applebee's repeats and restates the allegations set forth in the foregoing paragraphs of this Complaint as if set forth fully herein.

58.     Section 19.4(f) of the Franchise Agreements provide Applebee's with the right, upon written notice to the Defendants within 30 days of the termination of the Franchise Agreements, to require the Defendants to assign the leases of the RMH Restaurants to Applebee's and immediately surrender possession of the RMH Restaurants to Applebee's.

59.     On May 7, 2018, Applebee's advised the Defendants by telephone call of Applebee's election to take back RMH Restaurants in Texas and Arizona.

60.     Also, on May 8, 2018, Applebee's also provided Defendants written confirmation notice in the Termination Confirmation Letter of its intention to take control of the RMH Restaurants in Texas and Arizona.

61.     Further, by filing this Complaint, Applebee's hereby advises Defendants of Applebee's election to take back the specified RMH Restaurants located in Arizona and Texas, as attached in **Exhibit 16** hereto, including having Defendants assign the leases for the RMH Restaurants to Applebee's and surrender the premises and restaurant contents for those RMH Restaurants.

62.     Applebee's is prepared to pay for the fair value of the equipment, food stuffs and other personal property at the RMH Restaurants pursuant to the procedures set forth in the Franchise Agreements.

THEREFORE, the Court should find and declare that Applebee's properly and timely exercised its right to take control of the Arizona and Texas RMH Restaurants pursuant to Section 19.4(f) of the Franchise Agreements.[3]

### COUNT III - DECLARATORY JUDGMENT AS TO APPLEBEE'S TIMELY EXERCISED RIGHT TO TAKE CONTROL OF THE REMAINING RMH RESTAURANTS

63.     Applebee's repeats and restates the allegations set forth in the foregoing paragraphs of this Complaint as if set forth fully herein.

64.     Section 19.4(f) of the Franchise Agreements provide Applebee's with the right, upon written notice to the Defendants within 30 days of the termination of the Franchise

---

[3]     Applebee's seeks stay relief in its pending Stay Relief Motion to enforce this exercised right against the Defendants in another forum.

Agreements, to require the Defendants to assign the leases of the RMH Restaurants to Applebee's and immediately surrender possession of the RMH Restaurants to Applebee's.

65.     By filing this Complaint, Applebee's hereby advises Defendants Applebee's election to take back the RMH Restaurants listed on **Exhibit 17** hereto (the "Remaining RMH Restaurants"), including having Defendants assign the leases for the Remaining RMH Restaurants to Applebee's and surrender the premises for the Remaining RMH Restaurants.

66.     Applebee's is prepared to pay for the fair value of the equipment, food stuffs and other personal property at the RMH Restaurants pursuant to the procedures set forth in the Franchise Agreements.

67.     Applebee's has elected to not exercise its post-termination right to take control over the Defendants' Closed franchises.

68.     Applebee's has also elected to not exercise its post-termination right to take control over the currently operating RMH Restaurants set forth on **Exhibit 18** hereto and, therefore, those restaurants need to immediately de-affiliate from using the Applebee's Marks.

THEREFORE, the Court should find and declare that Applebee's properly and timely exercised its right to take control of the Remaining RMH Restaurants pursuant to Section 19.4 and other application provisions of the Franchise Agreements.[4]

## COUNT IV - DECLARATORY JUDGMENT AS TO APPLEBEE'S POST-TERMINATION RIGHTS

69.     Applebee's repeats and restates the allegations set forth in the foregoing paragraphs of this Complaint as if set forth fully herein.

---

[4]     Applebee's seeks stay relief in its pending Stay Relief Motion to enforce this exercised right against the Defendants in another forum.

DOCS_DE:219666.1 18037/001

70.    Section 19 of the Franchise Agreements provide Applebee's with certain rights following termination of the Franchise Agreements, including requiring the Defendants to de-affiliate the RMH Restaurants, requiring assignment of the leases of the RMH Restaurants to Applebee's and compelling the Defendants to sell their inventory, equipment and fixtures to Applebee's.

71.    Given that the Franchise Agreements terminated on April 27, 2018, Applebee's currently has a right to enforce its post-termination rights under the Franchise Agreements.

72.    To the extent that Bank of America as Administrative Agent may have a lien on the leases of the RMH Restaurants or the Defendants' inventory, equipment or fixtures, those rights will pass-through the Cases and any dispute between the Administrative Agent and Applebee's regarding their respective rights in the leases, inventory, equipment and fixtures may be resolved in another forum or settled.

THEREFORE, the Court should find and declare that Applebee's currently has a right to enforce its post-termination rights pursuant Section 19 of the Franchise Agreements, including requiring the Defendants to de-affiliate the RMH Restaurants, requiring assignment of the leases of the RMH Restaurants to Applebee's and compelling the Defendants to sell their inventory, equipment and fixtures to Applebee's.[5]

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Applebee's prays for relief and respectfully requests that the Court enter declaratory judgments in its favor as follows:

(a)    Declaring that the Franchise Agreements were terminated as of April 27, 2018 and, thus, are not property of the Defendants' bankruptcy estates;

---

[5]    Applebee's seeks stay relief in its pending Stay Relief Motion to enforce these post-termination rights against the Defendants in another forum.

(b)       Declaring that Applebee's properly and timely, including by filing this Complaint, exercised its right to take control of the Arizona and Texas RMH Restaurants pursuant to Section 19.4(f) of the Franchise Agreements;

(c)       Declaring that Applebee's properly and timely, including by filing this Complaint, exercised its right to take control of the Remaining RMH Restaurants pursuant to Section 19.4 and other application provisions of the Franchise Agreements;

(d)    Declaring that Applebee's currently has a right to enforce its post-termination rights pursuant Section 19 of the Franchise Agreements, including requiring the Defendants to de-affiliate the RMH Restaurants, requiring assignment of the leases of the RMH Restaurants to Applebee's and compelling the Defendants to sell their inventory, equipment and fixtures to Applebee's; and

(e) Granting Applebee's such other and further relief as the Court finds just and proper.

Dated: May 25, 2018                             PACHULSKI STANG ZIEHL & JONES LLP

                                                */s/ Laura Davis Jones*
                                                Laura Davis Jones (DE Bar No. 2436)
                                                Timothy P. Cairns (DE Bar No. 4228)
                                                919 N. Market Street, 17th Floor
                                                P.O. Box 8705
                                                Wilmington, DE 19899-8705 (Courier 19801)
                                                Telephone: (302) 652-4100
                                                Facsimile: (302) 652-4400
                                                Email: ljones@pszjlaw.com
                                                        tcairns@pszjlaw.com
                                                 -and-

- 18 -

DENTONS US LLP
Joel Siegel (*Admitted Pro Hac Vice*)
Samuel Maizel (*Admitted Pro Hac Vice* )
601 S. Figueroa Street
Suite 2500
Los Angeles, California
Telephone: 213-623-9300
Facsimile: 213-623-9924
E-mail: joel.siegel@dentons.com
       samuel.maizel@dentons.com

-and-

DENTONS US LLP
Robert Richards (*Admitted Pro Hac Vice*)
Geoffrey Miller (*Admitted Pro Hac Vice*)
233 South Wacker Drive
Suite 5900
Chicago, Illinois 60606
Telephone:  312-876-8000
Facsimile:  312-876-7934
E-mail:  robert.richards@dentons.com
       geoffrey.miller@dentons.com

*Counsel to Dine Brands Global Inc., Applebee's Restaurants LLC and Applebee's Franchisor LLC*