## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>RMH Franchise Holdings, Inc., *et al.*,<br><br>Debtors. | Chapter 11<br>Case No. 18-11092 (BLS)<br>Jointly Administered |
| DINE BRANDS GLOBAL, INC.,<br>APPLEBEE'S RESTAURANTS LLC, and<br>APPLEBEE'S FRANCHISOR LLC,<br><br>Plaintiffs,<br><br>v.<br><br>RMH FRANCHISE HOLDINGS, INC.,<br>NULNK, INC., RMH ILLINOIS, LLC,<br>RMH FRANCHISE CORP., and<br>CONTEXT RESTAURANTS, INC.,<br><br>Defendants,<br><br>and<br><br>BANK OF AMERICA, N.A., as Administrative<br>Agent, Collateral Agent and L/C Issuer, and THE<br>OFFICIAL COMMITTEE OF UNSECURED<br>CREDITORS,<br><br>Intervenors. | Adv. Proc. No. 18-50481 (BLS)<br><br>**Re: Docket Nos. 38, 39, 40, 49, 50,<br>51, 55, 56, 68** |

## OPINION[1]

Before the Court are cross-motions for summary judgment in this adversary proceeding.[2]

RMH Franchise Holdings, Inc. and its affiliates (the "Debtors") are the Defendants and are

---

[1] This Opinion constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052.

[2] Originally, Plaintiffs filed a Motion for Relief from Stay [Docket No. 91] seeking largely the same relief requested in this adversary proceeding. On May 23, 2018, this Court found the relief sought in the Motion was improperly

franchisees of Applebee's restaurants. Dine Brands Global, Inc. and its subsidiaries Applebee's

Restaurants LLC and Applebee's Franchisor LLC are the Plaintiffs herein (collectively referred

to as "Applebee's"). The heart of the dispute is whether certain contracts governing Debtors'

operation of the franchises were terminated prepetition. If so, Applebee's would be entitled to

immediately exercise its remedies, including the right to take over the restaurants. If, on the other

hand, the Franchise Agreements did not terminate prepetition, the Debtors' rights are protected

by the automatic stay and Applebee's would be prohibited from terminating or exercising other

remedies absent leave of Court. For the reasons that follow, the Court finds that the Franchise

Agreements were not terminated by Applebee's prior to the Petition Date. Accordingly, the

Court will grant the Motion filed by Debtors and deny the Motion filed by Applebee's.

## I.      BACKGROUND

The Debtors are the second-largest franchisee of Applebee's Neighborhood Grill & Bar

restaurants. As of May 8, 2018 (the "Petition Date"), they operated over 160 franchises across 15

states and represented about 10 percent of all Applebee's locations. All of the restaurants are

subject to individual Franchise Agreements between Applebee's, as franchisor, and the Debtors,

as franchisee. Decl. of Lucy Cheong in Support of Applebee's Motion for Summary Judgment,

AP Docket No. 40 (hereinafter, "Cheong Decl."). The Franchise Agreements grant the Debtors

the right to use Applebee's trademarks and system, including Applebee's recipes for food and

beverages, its operating methods, and its restaurant décor. Cheong Decl., ex. 2 (the "Franchise

Agreement") at § 1.1. In exchange, the Debtors pay a monthly royalty fee and also a percentage

---

brought and would more appropriately come before the Court in an adversary proceeding under Bankruptcy Rule
7001(9). Two days later, Applebee's filed the Complaint commencing this adversary proceeding.

of their gross sales toward an advertising fund to be used in support of Applebee's brand as a whole. *Id*. at § 9.1.

The Franchise Agreements grant Applebee's various rights, including the right to terminate without advance notice if the Debtors breach certain specified provisions, including the obligations to pay royalties and advertising fees. The Franchise Agreements provide as follows:

> 19.1    Franchisor shall have the right to terminate this Agreement immediately upon written notice to Franchisee stating the reason for such termination:
>
> (a) In the event of any breach or default of any of the provisions of Subsections 9.1 [Payment of fees], Section 12 [Transfer of a restaurant] or 13 [Confidentiality], Subsection 14.1 [Inspection] or Section 23 [Liquor License].

Franchise Agreement at § 19.1. Upon termination, the Debtors are required to discontinue use of Applebee's system and trademarks. *Id*. at § 19.2. Post-termination, Applebee's has 30 days to exercise its right to take over the restaurants. *Id*. The parties agree the Franchise Agreements are subject to Kansas law. *Id*. at § 21.2.

In June of 2017, Debtors stopped making the royalty payments due under the Franchise Agreements. On September 20, 2017, Applebee's sent a letter to the Debtors granting them 90 days to cure ("September 20 Letter"). That letter also provided that the Franchise Agreements would automatically terminate on the 91st day if the default remained uncured. Specifically, it advised:

> Pursuant to Section 19 [of the Franchise Agreements] and applicable law, Applebee's demands that RMH pay the Overdue Amount within 90 days of receipt of this letter to cure each default of the franchise agreements for the restaurants identified on the attached chart. For restaurants for which RMH does not cure the default, the franchise agreements for the restaurants will terminate on the 91st day without further notice.

3

Cheong Decl. at ex. 5. It is not disputed that Debtors did not cure the default when they received

the September 20 Letter and the parties continued to engage in discussions to seek a resolution.

In January of 2018, Debtors also stopped paying the advertising fees.

Prior to the expiry of the cure period set forth in the September 20 Letter, Applebee's

sent an extension letter to the Debtors dated December 18, 2018. That letter provided in full as

follows:

> In light of our scheduled call this week with respect to the restaurants in your
> portfolio, and without waiver of any of our rights and remedies, we are amenable
> to extend your cure period for the restaurants listed on the attached schedule by an
> additional 30 days to January 22, 2018. We reserve our right to revisit the extension
> at any time.
>
> Nothing in this letter shall be construed to modify or limit any rights or remedies
> of Applebee's. Applebee's expressly reserves all of its rights with respect to any
> and all remedies at law or in equity, under the franchise agreements, any other
> contract, or any other source of right or remedy. Neither this letter nor any action
> taken or not taken by Applebee's, including, but not limited to, continuing to do
> business, accepting records, accepting money, or any other action or inaction, shall
> be deemed to be a waiver of Applebee's right to any remedies.

Cheong Decl. at ex. 7.[3] Significantly, the foregoing December correspondence expressly extends

the cure period, but does not recite the explicit termination notice contained in the September 20

Letter. The record reflects the parties continued to negotiate into January of 2018.

Throughout this period, Debtors continued to not pay the royalties to Applebee's. The

record reflects that in January of 2018, the Debtors ceased making the payments due for

advertising. The parties agreed to a further extension of the cure period from January 22, 2018 to

February 15, 2018. Cheong Decl. at ex. 12. The language used in that cure extension letter is

---

[3] The spreadsheet attached to this letter and each subsequent extension letter is identical to the spreadsheet attached
to the September 20 Letter, which contained a cure amount. The unpaid royalty and advertising fees continued to
accrue in that time frame. By December, therefore, it would appear the spreadsheet was out of date and its total cure
amount no longer accurate.

essentially identical to that quoted immediately above. Two further identical extensions carried the cure period to April 26, 2018 (collectively, the "Cure Extensions").

On April 25—prior to the expiration of the cure period—Applebee's agent signed a letter agreeing to delay exercising its rights under the Franchise Agreements (the "Forbearance Letter"). It was sent the following day. Cheong Decl. at ex. 32. Specifically, it stipulated Applebee's would:

> forbear from taking any further actions against [the Debtors] or the Franchise Restaurants, whether at law or in equity, to enforce our rights and remedies against [the Debtors] or the Franchise Restaurants, under or in connection with the franchise agreements, until May 8, 2018. This agreement to forbear is not an extension of the cure periods referred to in prior Notices, which have already expired.[4]

Cheong Decl. at ex. 31. The record reflects that the Debtors owed Applebee's $12,161,823 in unpaid royalties and advertising fees at the end of the cure period.

In the early morning hours of May 8, Debtors filed their Chapter 11 petitions. Later that day Applebee's sent another forbearance letter, agreeing to delay "enforcing its termination rights" until May 20 and again advising the Debtors the cure period had expired. Cheong Decl. at ex. 35. Applebee's simultaneously sent a letter purporting to terminate the Franchise Agreements for restaurants in Arizona and Texas, retroactively effective to April 27, 2018 ("Arizona Termination"). Cheong Decl. at ex. 34.

Also on May 8, apparently prior to learning of the commencement of the Debtors' Chapter 11 cases, Applebee's filed suit against the Debtors in the United States District Court for the District of Kansas seeking damages and injunctive relief. In its complaint before the court in

---

[4] The Forbearance Letter contains an inaccuracy: the cure period had not in fact expired at the time the letter was drafted and signed.

Kansas, Applebee's asserted it intended to exercise its termination rights for the Arizona and

Texas restaurants on May 8. Nieburg Decl., AP Docket No. 51 at ex. 32.

Applebee's has filed this adversary proceeding seeking, among other relief, a declaratory

judgment that the Franchise Agreements terminated prepetition. With leave of Court, the Official

Committee of Unsecured Creditors and the Debtors' senior secured lenders have intervened. The

Debtors filed an answer and have asserted counterclaims for damages against Applebee's for

alleged breach of contract. The parties then filed cross motions for summary judgment [AP

Docket Nos. 38 and 49] which have been fully briefed. The Court heard oral argument on

September 12, 2018 and took the matters under advisement. This matter is ripe for disposition.

## II.  STANDARD

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding

through Bankruptcy Rule 7056, states "[t]he court shall grant summary judgment if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he judge's function is not himself to

weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[S]ummary

judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248 (internal

quotation omitted). In other words, "[i]f reasonable minds could differ as to the import of the

evidence . . . a verdict should not be directed." *Id.* at 250-51 (citation omitted).

In a contract case, summary judgment is appropriate where the contract language is clear

and unambiguous. *Tamarind Resort Assocs. v. Gov't of V.I.*, 138 F.3d 107, 110 (3d Cir. 1998). A

contract is unambiguous if it is "reasonably capable of only one construction." *Id.* at 110-11

(citation omitted). The movant "bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S 317, 323 (1986). And "[w]hen the moving party has carried its burden . . . the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation omitted). "On summary judgment, [the Court] must draw all reasonable inferences in favor of the nonmoving party." *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 333 (3d Cir. 1995).

The Franchise Agreements are governed by Kansas law, which mandates that termination of a contract be "clear and unambiguous and convey an unmistakable purpose to rescind or forfeit the agreement." *Warrick v. McKnab's Estate*, 187 P.2d 502, 506 (Kan. 1947). A right to terminate a contract is in the "nature of a forfeiture and will be strictly construed." *Id*; *see also Fred Mosher Grain v. Kansas Co-op. Wheat Mktg. Ass'n*, 15 P.2d 421, 424-25 (Kan. 1932).

### III.    JURISDICTION

This Court has subject matter jurisdiction over these jointly administered Chapter 11 cases and this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The parties have each conceded some matters in the adversary are core and some are non-core. The immediate issue before the Court today is whether the rights under the Franchise Agreements are property of the Debtors' estates. This is a core matter. Debtors consent to the entry of final orders or judgment with respect to their Counterclaims and the claims asserted against them in the Complaint. Applebee's Complaint and Answer do not affirmatively consent to entry of final orders. Pursuant to Local

Rule 7012-1, the lack of affirmative language relating to consent or non-consent to the entry of final orders or judgments by this Court constitutes a waiver.

## IV.    THE PARTIES' POSITIONS

Applebee's notes as a threshold matter that there is no dispute that the Debtors were and are in material default of their obligations under the Franchise Agreements. It asserts the Franchise Agreements terminated on April 27, 2018 with the expiry of the final cure period and are therefore not subject to or protected by the automatic stay. In support, Applebee's claims the automatic termination provision in the September 20 Letter echoed through each of the subsequent Cure Extensions and effected the termination of the Franchise Agreements when the last cure period ended.

The Debtors assert Applebee's has failed to provide them with clear and unambiguous notice of intent to terminate. They offer two main theories to support their argument. First, the Debtors contend the Cure Extensions did not discuss termination and thus did not operate to extend the automatic termination contained in the September 20 Letter. Second, even if the Cure Extensions did extend the automatic termination, the Forbearance Letter delayed the exercise of Applebee's termination rights until May 8—the Petition Date. As termination could not have occurred prepetition, the Debtors argue that the Franchise Agreements are property of their estates and that Applebee's is precluded from terminating by the automatic stay.

## V.    DISCUSSION

For purposes of summary judgment, the dispute in this matter boils down to whether the Franchise Agreements terminated prepetition. To answer that question, the Court looks to the Franchise Agreements and the series of letters exchanged by the parties in the months leading up to the petition.

8

*a. Cure Extension Letters*

As noted in detail above, Applebee's sent a termination letter in September 2017 that explicitly gave notice of impending termination, followed by a series of letters extending the cure period, none of which mentioned termination. The Debtors argue the Cure Extensions did not provide them with adequate or commercially reasonable notice of Applebee's intent to terminate the Franchise Agreements. The Court agrees. Reliance on a series of letters with extensions of cure periods, none of which mention termination, is not clear and unambiguous notice of intent to terminate. Those letters operated only to extend the time within which the Debtors might cure the acknowledged defaults.

Applebee's argues the reservation of rights in each Cure Extension operated to preserve and push termination to the expiration of the final cure period. In its brief, Applebee's quotes the September 20 Letter and suggests, in light of subsequent events, it should be read to say "the Franchise Agreements terminated 'on the [219th] day without further notice,' or, in other words, on April 27, 2018." AP Docket No. 39 (brackets in original). That argument is unpersuasive. The September 20 Letter provided the Franchise Agreements would terminate on the 91st day after notice of default. Applebee's cannot retroactively edit the September 20 Letter. The subsequent Cure Extensions did not provide for termination of the Franchise Agreements upon expiry of the cure period and are inadequate to provide the requisite clear and unambiguous notice of termination.

Expiration of the cure periods thus did not effect a termination of the Franchise Agreements. A straightforward reading of the termination provision in § 19.1 of the Franchise Agreements in light of the parties' correspondence reveals that, upon the expiration of the cure period, Applebee's could have terminated the Franchise Agreements immediately by providing

the Debtors with a clear and explicit notice of termination. But Applebee's did not take this next and necessary step.

Applebee's raises the principle that a debtor does not have a property interest in a franchise agreement that has been terminated prepetition. *In re Tornado Pizza, LLC*, 431 B.R. 503, 510-11 (Bankr. D. Kan. 2010). Applebee's is right on the law, but that principle has no application to the facts here. In *Tornado*, the franchisor sent a letter that contained clear notice the franchise agreement unconditionally terminated on a defined date. *Id*. at 509. The *Tornado* debtor filed its petition after that date and the court ruled the franchise agreement was not property of the estate. The facts here are immediately distinguishable. Applebee's did not state a definite termination date. It originally stated the Franchise Agreements would terminate *if* Debtors did not cure within the cure period. It then extended the cure deadline several times without re-asserting its termination rights. Nothing in the record suggests Applebee's unambiguously notified Debtors prior to the Petition Date that it intended to terminate the Franchise Agreements on April 27, 2018.

Under the correspondence issued by Applebee's, expiration of the cure period was nothing more than that: the time within which the Debtors might cure defaults would have ended. Debtors would thereupon be in a position where they were in default under the Franchise Agreements and would no longer enjoy the right to cure that default. But expiration of the cure period did not simultaneously effect termination of the Franchise Agreements. *See* Franchise Agreement at § 19.1. A further notice was required and was not forthcoming.

Kansas law requires a valid notice of termination to be clear and unambiguous. *Warrick*, 187 P.2d at 506 (Kan. 1947). The Cure Extensions did not provide clear and unambiguous notice of termination. Applebee's was aware it could have included language providing for termination

in the Cure Extensions and it chose to omit that language. Debtors have met their burden in demonstrating there is no dispute of fact on whether the Franchise Agreements terminated prior to the Petition Date. They did not.

      *b.  The Forbearance Letter*

Even were the Court to find the Cure Extensions provided clear and unambiguous notice of Applebee's intent to terminate, the record shows the Forbearance Letter signed on April 25, 2018 effectively delayed Applebee's right to terminate until the Petition Date. The Forbearance Letter, which was drafted by Applebee's, states it would "forbear from taking any further actions against [the Debtors] or the Franchise Restaurants . . . to enforce our rights and remedies against [the Debtors] or the Franchise Restaurants, until May 8, 2017." Cheong Decl. at ex. 31. The Forbearance Letter reflects Applebee's commitment to delay pursuing all of its rights under the Franchise Agreement—including termination.

Applebee's disputes that interpretation and attempts to distinguish between the act of termination and exercise of its post-termination rights. It again insists the Franchise Agreements had terminated nearly two weeks before the Petition Date, and that the Forbearance Letter delayed only its post-termination rights. Applebee's posits the reference to "termination rights" in the Forbearance Letter encompassed only the "post-termination rights, including, among other things, the right to assignment of any real estate leases for the restaurants, surrender of the restaurants' premises, and de-identification." AP Docket No. 38; *see also* Hearing Tr. 29-30, Sept. 12, 2018. But that distinction does not work under the wording of the Forbearance Letter. Again, Applebee's agent signed the Forbearance Letter on April 25, prior to the expiration of the cure period. On its face, the Forbearance Letter delayed "any further actions against [the Debtors] . . . to enforce our rights and remedies . . . under or in connection with the franchise

agreements." It did not address to which rights and remedies it applied and it did not differentiate between termination itself and the post-termination rights.

The only reasonable interpretation of the Forbearance Letter is that Applebee's committed to delay enforcing *all* of its rights, not simply its post-termination rights. The Arizona Termination also guides the Court toward this conclusion. Applebee's sent the Arizona Termination hours after Debtors filed their petitions. It purported to terminate thirty-five Franchise Agreements, effective two weeks earlier. Under Applebee's argument, the Arizona Termination would have been unnecessary. If Applebee's had already exercised its termination rights on April 27, it would have made little sense for it to send a termination notice two weeks after the fact. It also would have made little sense to send termination notice regarding only Arizona and Texas when it had terminated all of the Franchise Agreements. Again, on a plain language reading of the Forbearance Letter, Applebee's notified Debtors that the cure period had expired, but also agreed to forbear from exercising any or all of its "rights or remedies" until May 8. The Debtors then filed their petitions on May 8 before Applebee's sent the Arizona Termination or any other termination notice. Based on that language and the undisputed sequence of events, Applebee's clearly did not terminate the Franchise Agreements prepetition and they are therefore property of the estate.[5]

---

[5] Having determined the Franchise Agreements did not terminate prepetition, the Court does not reach the Debtors' alternative argument that its breach or default was excused by alleged breaches of the Franchise Agreements by Applebee's.

**VI.    CONCLUSION**

For the forgoing reasons, the Court will grant Debtors' Motion for Summary Judgment and

deny Applebee's Motion. The parties are requested to confer and submit a form of judgment

order consistent with this ruling within seven days.

Dated: September 25, 2018
Wilmington, Delaware

By the Court:

BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE