# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>RMH FRANCHISE HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-11092 (BLS)<br><br>(Jointly Administered) |
| DINE BRANDS GLOBAL, INC., APPLEBEE'S RESTAURANTS LLC, and APPLEBEE'S FRANCHISOR LLC<br><br>Plaintiffs,<br><br>v.<br><br>RMH FRANCHISE HOLDINGS, INC., NULNK, INC., RMH ILLINOIS, LLC, RMH FRANCHISE CORP., and CONTEX RESTAURANTS, INC.,<br><br>Defendants.<br><br>-and-<br><br>BANK OF AMERICA, N.A., as Administrative Agent, Collateral Agent and L/C Issuer, and THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS,<br><br>Intervenors. | Adv. Pro. No. 18-50481 (BLS)<br><br>**Objection Deadline: TBD**<br>**Hearing Date: TBD**<br><br><br><br>**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AWARDING REASONABLE ATTORNEYS' FEES AND EXPENSES AND (II) DIRECTING THE FRANCHISOR TO PAY SUCH ATTORNEYS' FEES AND <u>EXPENSES TO THE DEBTORS</u>** |
| RMH FRANCHISE HOLDINGS, INC., NULNK, INC., RMH ILLINOIS, LLC, RMH FRANCHISE CORP., and CONTEX RESTAURANTS, INC.,<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>DINE BRANDS GLOBAL, INC., APPLEBEE'S RESTAURANTS LLC, and APPLEBEE'S FRANCHISOR LLC<br><br>Counterclaim Defendants. | |

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: RMH Franchise Holdings, Inc. (7150); NuLnk, Inc. (7381); RMH Illinois, LLC (0696); RMH Franchise Corporation (1807); and Contex Restaurants, Inc. (0710). The headquarters for the above-captioned Debtors is located at One Concourse Parkway, N.E. Suite 600, Atlanta, GA 30328.

01:23656607.9

RMH Franchise Holdings, Inc. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), by their undersigned attorneys, hereby submit this motion (the "Motion")[2] for entry of an order, pursuant to § 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 7054 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and § 19.3 of the Franchise Agreements, (i) awarding the Debtors reasonable attorneys' fees and expenses attributable to the above-captioned adversary proceeding (the "Adversary Proceeding") as of the date of the Court's *Opinion* [Adv. Docket No. 77] (the "Opinion Date"), plus additional attorneys' fees and expenses incurred (a) in connection with the enforcement or appeal of the Judgment Order (as defined below) and (b) in pursuing this Motion to final resolution, including any appeals, and (ii) directing the Franchisor to pay such attorneys' fees and expenses to the Debtors within five (5) business days of the entry of an order approving this Motion.[3]  In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for

---

[2]  The Court has scheduled a pretrial conference for November 19, 2018, at 10:00 a.m. to discuss attorneys' fees and other issues.  *See* Docket No. 83.  In addition, the Franchisor has filed a notice of appeal regarding the Judgment Order (as defined below).  *See* Docket No. 81.  Out of an abundance of caution, as the Debtors advised the Court at the hearing on October 11, 2018, the Debtors are filing this Motion within 14 days of entry of the Judgment Order.  *See* Fed. R. Bankr. P. 7054(b)(2); Fed. R. Civ. P. 54(d)(2).

[3]  The reasonable attorneys' fees and expenses that this Motion seeks in connection with and related to the Adversary Proceeding include the attorneys' fees and expenses incurred defending against the Lift Stay Motion (as defined below), which the Court determined was properly presented by way of the Adversary Proceeding, and any other attorneys' fee and expenses attributable or otherwise related to the Adversary Proceeding, such as those incurred due to the implications of the Franchisor pursuing termination of the Franchise Agreements, or asserting that the Franchise Agreements were terminated, and "the looming ruling by the Court on the franchise termination issue." *Objection of Bank of America, N.A. to Debtors' Motion for Interim and Final Orders (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting Adequate Protection, (C) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b), and (D) Granting Related Relief* at 2 [Docket No. 437].  For the avoidance of doubt, the Debtors fully reserve any and all rights to seek attorneys' fees and expenses under Section 19.3 of the Franchise Agreement for attorneys' fees and expenses unrelated to the Adversary Proceeding.

01:23656607.9

2

the District of Delaware, dated as of February 29, 2012 (the "Amended Standing Order").  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory and legal predicates for the relief requested herein are § 105(a) of the Bankruptcy Code and Bankruptcy Rule 7054.

## BACKGROUND

3. On May 8, 2018 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  An official committee of unsecured creditors (the "Committee") was appointed on May 24, 2018.  No request has been made for the appointment of a trustee or an examiner.

4. On May 16, 2018, the Franchisor filed *Applebee's Motion to Modify the Automatic Stay* [Docket No. 91] (the "Lift Stay Motion"), seeking a declaratory judgment that the Franchise Agreements terminated prepetition.

5. On May 23, 2018, the Court held a telephonic hearing on the Lift Stay Motion and ruled that the relief requested by the Franchisor was properly presented by way of an adversary proceeding.

6. On May 25, 2018, the Franchisor commenced this Adversary Proceeding by filing the Complaint. *See* Adv. Docket No. 1. In the Complaint, the Franchisor alleged that it had terminated the Debtors' Franchise Agreements prior to the Petition Date.

7. On June 15, 2018, the Court entered an order [Adv. Docket No. 6], approving a stipulation between the Debtors, the Franchisor, the Committee, and Bank of America, N.A. ("BOA"), providing that, among other things, that the Committee and BOA would be permitted to intervene in the Adversary Proceeding, with all responses to the Complaint due June 22, 2018.

8. On June 19, 2018, the Debtors filed their Answer and Counterclaims. *See* Adv. Docket No. 7. In the Counterclaims, the Debtors alleged, among other things, that the Franchisor's purported termination of the Franchise Agreements was improper and ineffective.

9. On June 21, 2018, BOA filed an answer to the Franchisor's complaint and cross-claims against the Franchisor and the Debtors (the "BOA Cross-Claims"). *See* Adv. Docket No. 9. In the BOA Cross-Claims, BOA alleged that its first-priority security interests were superior to any rights the Franchisor may have in the Debtors' assets and that the Franchisor had contractually subordinated its interests in the Debtors' leases and business assets to BOA's interests.

10. On June 22, 2018, the Committee filed an answer to the Franchisor's Complaint and incorporated by reference the Debtors' Counterclaims against the Franchisor. *See* Adv. Docket No. 12.

11. On July 13, 2018, the Franchisor filed answers to the Committee's counterclaims [Adv. Docket No. 31], the Debtors' Counterclaims [Adv. Docket No. 32], and the BOA Cross-Claims [Adv. Docket No. 33].

12. Also on July 13, 2018, the Debtors filed an answer to the BOA Cross-Claims [Adv. Docket No. 35].

13. On July 16, 2018, the Court entered an order [Adv. Docket No. 36], approving a stipulation between the Committee and BOA providing that the Committee's answer to the BOA Cross-Claims would be due July 23, 2018. The Committee filed an answer to the BOA Cross-Claims on July 23, 2018, as required by the stipulation. [Adv. Docket No. 46].

14. On July 17, 2018, the Franchisor filed its motion for summary judgment [Adv. Docket No. 38] (the "Franchisor's Motion for Summary Judgment") and accompanying brief [Adv. Docket No. 39] and supporting affidavit [Adv Docket No. 40].

15. On July 27, 2018, the Debtors filed their cross-motion for summary judgment [Adv. Docket No. 49] (the "Cross-Motion") and brief in support of the Cross-Motion and in opposition to the Franchisor's Motion for Summary Judgment [Adv. Docket No. 50] (the "Debtors' Opening Brief").[4] The Cross-Motion and Debtors' Opening Brief were accompanied by a number of supporting affidavits [Adv. Docket Nos. 51, 52, 53].

16. On July 31, 2018, the Committee and BOA each filed a joinder to the Debtors' Cross-Motion [Adv. Docket Nos. 55, 56].

17. On August 10, 2018, the Franchisor filed its reply brief in support of the Franchisor's Motion for Summary Judgment and in opposition to the Debtors' Cross-Motion [Adv. Docket No. 68].

18. On August 17, 2018, the Debtors filed their reply brief in support of the Cross-Motion and in opposition to the Franchisor's Motion for Summary Judgment [Adv. Docket No.

---

[4] Capitalized terms used but not herein shall have the meanings given to such terms in the Debtors' Opening Brief.

01:23656607.9

71]. The Committee also filed a response in support of the Cross-Motion and in opposition to the Franchisor's Motion for Summary Judgment [Adv. Docket No. 70].

19. On September 12, 2018, the Court heard oral argument on the competing motions for summary judgment and took the matter under advisement.

20. On September 25, 2018, the Court issued its *Opinion* [Adv. Docket No. 77] granting the Debtors' Cross-Motion and denying the Franchisor's Motion for Summary Judgment.

21. On October 2, 2018, the Debtors submitted a proposed form of judgment order under certificate of counsel [Docket No. 78], and the Franchisor submitted a competing form of order [Docket No. 79].

22. On October 9, 2018, the Franchisor filed a notice of appeal of the Opinion [Docket No. 81].

23. On October 10, 2018, the Court entered its *Order and Final Judgment* [Docket No. 83] (the "Judgment Order") that (i) granted the Cross-Motion and entered final judgment for the Debtors and against the Franchisor with respect to (a) Count VI of the Debtors' Answer and Counterclaims and (b) all Counts of the Franchisor's Complaint, (ii) denied the Franchisor's Motion for Summary Judgment, (iii) scheduled a pretrial conference to discuss a schedule for the remaining litigation in the adversary proceeding, outstanding or proposed discovery, attorneys' fees issues, and any remaining matters.

### RELIEF REQUESTED

24. By this Motion, the Debtors seek entry of an order (i) awarding the Debtors the reasonable attorneys' fees and expenses attributable to the Adversary Proceeding as of the

Opinion Date in an amount currently estimated to be not less than $1,451,206.58,[5] plus additional attorneys' fees and expenses incurred (a) in connection with the enforcement or appeal of the Judgment Order and (b) in pursuing this Motion to final resolution, including any appeals, and (ii) directing the Franchisor to pay such attorneys' fees and expenses to the Debtors, pursuant to § 19.3 of the Franchise Agreements, within five (5) business days of the entry of an order approving this Motion.

## BASIS FOR RELIEF

25. The Debtors are entitled to reasonable attorneys' fees and expenses attributable to the Adversary Proceeding as of the Opinion Date, plus any additional attorneys' fees and expenses incurred (a) in connection with the enforcement or appeal of the Judgment Order (as defined below) and (b) in pursuing this Motion to final resolution, including any appeals,

---

[5] The Debtors' reasonable attorneys' fees and expenses include, but are not limited to, (i) Young Conaway Stargatt & Taylor, LLP ("YCST") attorneys' fees and costs, (ii) Witmer, Karp, Warner & Ryan LLP ("Witmer Karp") attorneys' fees and costs, (iii) Prime Clerk LLC ("Prime Clerk") costs, (v) Kelley Drye & Warren LLP ("Kelley Drye") attorneys' fees and costs, (vii) Bayard, P.A. ("Bayard") attorneys' fees and costs, and (vi) BOA costs. The Debtors are responsible for their own professionals' fees and expenses as well as the Committee's fees and expenses (by operation of the Bankruptcy Code) and BOA's fees and expenses (by order of the Court). *See, e.g.*, *Final Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting Adequate Protection, and (C) Granting Related Relief* ¶ 9 [Docket No. 546] ("The reasonable fees and expenses of the Agent shall be payable as set forth in the Loan Documents without further notice, motion, or application to, order of, or hearing before this Court . . . ."). The current estimate of reasonable attorneys' fees and expenses is as follows:

| Professional | Attorneys' fees and expenses |
|---|---|
| YCST | $1,014,300.00 |
| BOA | $78,746.00 |
| Witmer Karp | $95,235.03 |
| Bayard | $48,534.89 |
| Kelley Drye | $207,409.05 |
| Prime Clerk | $6,981.61 |
| **Total** | **$1,451,206.58** |

The Debtors are in the process of determining the full amount of each professional's attorneys' fees and expenses arising from and attributable to the Adversary Proceeding, and the amounts listed above are subject to increase. In addition, for the avoidance of doubt, the Debtors fully reserve any and all rights to seek attorneys' fees and expenses under Section 19.3 of the Franchise Agreement for attorneys' fees and expenses unrelated to the Adversary Proceeding.

01:23656607.9

7

pursuant to Section 19.3 of the Franchise Agreements. Section 19.3 of the Franchise Agreements provides, in relevant part, as follows

> In the event that any party to this Agreement initiates any legal proceeding to construe or enforce any of the terms, conditions and/or provisions of this Agreement, including, but not limited to, its termination provisions and its provisions requiring Franchisee to make certain payments to Franchisor incident to the operation of the Restaurant, or to obtain damages or other relief to which any such party may be entitled by virtue of this Agreement, the prevailing party or parties shall be paid its reasonable attorneys' fees and expenses by the other party or parties.

Franchise Agreement § 19.3.[6]

26. Bankruptcy courts enforce contractual fee-shifting provisions. *See, e.g.*, *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 448 (2007) ("[A]n otherwise enforceable contract allocating attorney's fees (i.e., one that is enforceable under substantive, nonbankruptcy law) is allowable in bankruptcy except where the Bankruptcy Code provides otherwise."); *In re Filene's Basement*, No. 11-13511 KJC, 2013 WL 620288, at *7 (Bankr. D. Del. Feb. 19, 2013); *In re Crown Books Corp.*, 269 B.R. 12, 15–16 (Bankr. D. Del. 2001). Moreover, "a court will not give a contractual fee provision an unreasonable or hypertechnical construction in order to limit its scope to avoid an award of fees." Robert L. Rossi, *Attorneys' Fees* § 9:11 (3d ed. 2009) (collecting cases). And "[a]ny ambiguities in the interpretation of the attorney fee clause of the contract ought to be construed against the drafter." *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1338 (10th Cir. 1984).

27. Given the Court's order granting the Debtors' Cross-Motion and denying the Franchisor's Motion for Summary Judgment, the Debtors are clearly the "prevailing party" entitled to recover attorneys' fees and expenses under Section 19.3 of the Franchise Agreements.

---

[6] This provision appears in all of the Franchise Agreements. A sample Franchise Agreement is included at tab 1 in the *Declaration of Michael S. Neiburg in Support of the Debtors' Cross-Motion for Summary Judgment and Opposition to the Franchisor's Motion for Summary Judgment* [Adv. Docket No. 51].

The Kansas Supreme Court has adopted the definition of "prevailing party" set forth in Black's Law Dictionary: "The party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention. The one in whose favor the decision or verdict is rendered and judgment entered. The party ultimately prevailing when the matter is finally set at rest. With respect to the specific question of attorney fees, it has been stated a prevailing party is the person who has an affirmative judgment rendered in his favor at the conclusion of the entire case." *Szoboszlay v. Glessner*, 664 P.2d 1327, 1333 (Kan. 1983) (citations and internal quotation marks omitted)). In *Glessner*, the Kansas Supreme Court reversed the trial court for failing to award attorneys' fees. According to the *Glessner* court, the plaintiff was still the "prevailing party" even though the trial court had reduced his damage award.

28. The Third Circuit's *Trade Secret* decision is illustrative. In that case, a franchisee ("Houston BW") informed its franchisor ("Trade Secret") that it intended to pursue arbitration to terminate two franchise agreements. Trade Secret thereafter filed chapter 11 and sold its assets to Regis. The arbitrator found that Trade Secret had breached the Franchise Agreements and awarded Houston BW approximately $317,000. Houston BW filed a motion to recover from Regis, which the bankruptcy court granted, and Houston BW sought to recover its attorneys' fees from Regis pursuant to the franchise agreements' fee-shifting provisions. The fee-shifting provision at issue stated: "should any party hereto commence any action or proceeding . . . for damages for any alleged breach of any provision hereof, or for a declaration of such party's rights or obligations hereunder, then the prevailing party shall be reimbursed by the losing party for all costs and expenses incurred in connection therewith . . . ." *In re Trade Secret Inc.*, 609 F.

App'x 98, 103 (3d Cir. 2015). The bankruptcy court determined that this provision plainly entitled Houston BW to its fees and expenses, and the district court affirmed.

29. On appeal, the Third Circuit also affirmed, explaining that "[t]he Franchise Agreements are governed by Kansas law, which permits a court to award attorneys' fees where, as here, they are 'provided for by contract.'" *Id.* (quoting *Farmers Cas. Co. v. Green*, 390 F.2d 188, 192 (10th Cir. 1968)). Rejecting Regis's "tortured interpretation" of the franchise agreements, the *Trade Secret* court held that the plain language of those agreements entitled Houston BW, as the prevailing party, to any fees and expenses incurred in connection with its action to collect from Regis. Accordingly, the bankruptcy court had correctly concluded that Houston BW was entitled to fees and expenses related to the arbitration award, including, among other things, fees related to post-arbitration collection efforts.[7]

30. As in *Trade Secret*, the attorneys' fees and expenses sought herein were reasonable in light of the extent and nature of the work attributable to the Adversary Proceeding. The hourly rates and corresponding rate structure are consistent and competitive with those of other counsel of comparable caliber for counsel for other corporate restructuring and bankruptcy matters, as well as similar complex corporate and litigation matters whether in court or otherwise, regardless of whether a fee application is required. The applicable hourly rates are set

---

[7] The Third Circuit also rejected Regis's arguments that Houston BW could not recover for (i) fees related to proceedings in other jurisdictions and (ii) fees incurred litigating the amount of attorneys' fees. First, "the Franchise Agreement does not prohibit a party from obtaining fees for work performed outside the arbitration that were related to it. The only limiting factor imposed therein is the 'in connection therewith' language, which is satisfied here since Houston's post-arbitration efforts were to collect the Arbitration Award." *Trade Secret*, 609 F. App'x at 104 n.3; *see also Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 560 (1986) (holding that "the fact that the work done by counsel [monitoring compliance with consent decree] did not occur in the context of traditional judicial litigation does not preclude an award of reasonable attorney's fees under [the fee-shifting provision] for the work done during these portions of the present action"). Second, "Kansas law generally permits reimbursement for 'fees incurred litigating the amount of attorney fees,' thus the Bankruptcy Court correctly granted reimbursement for this activity." *Trade Secret*, 609 F. App'x at 104 n.3 (internal citation removed) (quoting *Moore v. St. Paul Fire Mercury Ins. Co.*, 3 P.3d 81, 86 (Kan. 2000)). As in *Trade Secret*, the limitations that the Bankruptcy Code imposes on retained professional seeking fees for defending their fee applications are inapplicable here given that it is the Debtors, not their professionals, that are entitled to recover their costs. *Cf. In re Boomerang Tube, Inc.*, 548 B.R. 69, 73 (Bankr. D. Del. 2016).

at a level designed to compensate counsel fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. Hourly rates vary with the experience and seniority of the individuals assigned.

31. The professionals and advisors retained by the Debtors, BOA, and the Committee performed their services economically, effectively, and efficiently. Accordingly, the Debtors submit that the time expended by these professionals and advisors was reasonable and that the Court should (i) award the Debtors attorneys' fees and expenses in an amount currently estimated to be not less than $1,451,206.58, plus additional attorneys' fees and expenses incurred (a) in connection with the enforcement or appeal of the Judgment Order and (b) in pursuing this Motion to final resolution, including any appeals, and (ii) order the Franchisor to pay such amounts to the Debtors, pursuant to Section 19.3 of the Franchise Agreements, within five (5) business days of the entry of an order approving this Motion.

32. In sum, it is respectfully submitted that the attorneys' fees and expenses attributable to the Adversary Proceeding were necessary, appropriate and reasonable given the complexity and importance of the matter, the time expended, the nature and extent of services provided, the value of the services, and the cost of comparable services. The Debtors' request to recover attorneys' fees and expenses is warranted and should be approved.

## **NOTICE**

33. Notice of this Motion has been provided to (i) counsel to the Franchisor; (ii) the Office of the United States Trustee for the District of Delaware; (iii) counsel for Bank of America, N.A., as Administrative Agent and Letter of Creditor Issuer; (iv) counsel to the Committee; (v) the Professionals (as defined in the *Debtors' Motion for an Administrative Order, Pursuant to Sections 105(a) and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a),*

*and Local Rule 2016-2, Establishing Procedures for Interim Compensation and Reimbursement of Professionals* [Docket No. 103]); (vi) the OCPs (as defined in the *Debtors' Motion for an Order, Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code, Authorizing the Debtors to Retain and Compensate Certain Professionals Utilized in the Ordinary Course of Business* [Docket No. 105]); and (vii) all parties that, as of the filing of this Motion, have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the proposed order attached hereto as **Exhibit A**, (i) awarding the Debtors reasonable attorneys' fees and expenses attributable to the Adversary Proceeding as of the Opinion Date, plus additional attorneys' fees and expenses incurred (a) in connection with the enforcement or appeal of the Judgment Order and (b) in pursuing this Motion to final resolution, including any appeals, (ii) directing the Franchisor to pay such amounts to the Debtors, pursuant to § 19.3 of the Franchise Agreements, within five (5) business days of the entry of an order approving this Motion, and (iii) granting such other and further relief as is just and proper.

| | |
|---|---|
| Dated:  October 24, 2018<br>          Wilmington, Delaware | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>*/s/ Travis G. Buchanan*<br>James L. Patton, Jr. (No. 2202)<br>M. Blake Cleary (No. 3614)<br>John T. Dorsey (No. 2988)<br>Travis G. Buchanan (No. 5595)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone:    (302) 571-6600<br>Facsimile:     (302) 571-1256<br><br>-and-<br><br>WITMER, KARP, WARNER & RYAN LLP<br>Eric H. Karp<br>22 Batterymarch Street<br>Boston, Massachusetts 02109<br>Telephone:    (617) 423-7250<br>Facsimile:     (617) 423-7251<br><br>*Counsel for the Debtors and Debtors in Possession* |